In re Carl H. NEUMAN, d/b/a Lydia E. Hall Hospital, Syosset Hospital and Long Island Food Company, Debtor.

James GARRITY, Chapter 11, Trustee, Plaintiff,

v.

HOSPITAL CONSULTANTS, INC., Chester Business Services, Inc., Sarah R. Neuman Foundation, Inc., Continued Care Facilities, Inc., Loretta B. Neuman Consultants, Inc., Rebco Insurance Exchange Limited, Carl E. Neuman, Edward Leffler, Loretta B. Neuman, Ruth Wiegan, James Rudden, Irving Baum and Morris Ehrlich, Defendants.

No. 90 Civ. 0418 (KMW).

United States District Court, S.D. New York.

April 18, 1991.

Nancy Kilson, Deputy Chief U.S. Atty., New York City, for intervenor.

Preston A. Leschins, New York City, for defendant-appellee Baum.

Morris Ehrlich, New York City, pro se.

Preston A. Leschins, New York City, pro se.

Bill Schrag, Zalkin, Rodin & Goodman, New York City, for trustee.

Katz, Kleinbaum, Farber & Karson, White Plains, N.Y., for debtor Neuman.

Emmet, Marvin & Martin, New York, N.Y., for creditor Bank of N.Y.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

This case is before this court on appeal from a decision of the Hon. Prudence B. Abram of the United States Bankruptcy Court for the Southern District of New York. Appellants Morris Ehrlich, Preston Leschins and Irving Baum appeal a November 28, 1989 order of the Bankruptcy Court enjoining them from interfering with the implementation of an order approving the compromise and settlement of claims between the trustee and the debtor in *In re: Carl H. Neuman, d/b/a/ Lydia E. Hall, Syosset Hospital and Long Island Food Company*, holding them in contempt of court and imposing a fine of $1500.00 on attorney Leschins and litigant Baum, for violating the automatic stay imposed by Section 362(a) of the Bankruptcy Code. Given that a Settlement between the debtor and trustee was effected on January 9, 1990, the only issues on appeal are the correctness of the order of contempt and the imposition of the $1,500 fine.

The District Court has jurisdiction to hear and determine the issues presented on this bankruptcy appeal by virtue of 28 U.S.C. §§ 158(a) and 1334. A district court's appellate review of a bankruptcy court decision is governed by Fed.R.Bankr. 8013. A bankruptcy judge's conclusions of law are subject to de novo review and findings of fact shall not be set aside unless clearly erroneous.

## FACTS

On December 11, 1984, Carl H. Neuman (debtor) filed a petition under Chapter 11.[1] On March 18, 1986, James L. Garrity was appointed Chapter 11 Trustee. Various adversary proceedings were commenced, and after much litigation and antagonism, the attorneys for the trustee and the debtor negotiated a settlement agreement. In July 1989, Judge Abram heard testimony and argument on the application for approval of the proposed settlement. Among others, Mr. Ehrlich, a creditor, appeared and argued against the settlement. He argued primarily that the transaction was not favorable to the shareholders of the Sarah R. Neuman Foundation ("Foundation") and Continued Care Facilities ("CCF"). Mr. Baum, also a creditor, did not offer any opposition to the settlement. The settlement was approved by Judge Abram from the bench on July 21, 1989.

On August 14, 1989, before Judge Abram had signed an order approving the settlement, Irving Baum by his attorney Preston Leschins commenced a shareholder's derivative action in the Supreme Court of the State of New York, County of New York against CCF, Foundation, Rebco Insurance Exchange Limited ("Rebco")[2] and Carl Neuman and Loretta Neuman.[3] The

---

1. Carl Neuman was the debtor in possession of Lydia Hall Hospital, Syosset Hospital, and Sarah R. Neuman Nursing Home. The land on which the Sarah R. Neuman Nursing Home was located was owned by the Sarah R. Neuman Foundation, a corporation of which Carl Neuman and Loretta Neuman (husband and wife) were the principal officers. The Foundation is a wholly owned subsidiary of Continued Care Facilities.

2. Rebco is another wholly owned subsidiary of CCF. It is an offshore insurance company formed by the debtor to insure him against medical malpractice liability in the operation of the two hospitals and sold by him to CCF.

3. The parties dispute whether the action was instituted against Carl Neuman and Loretta Neuman individually or strictly in their capacities as trustees of trusts which owned a substantial portion of the shares of CCF.

complaint alleged numerous improprieties in the conduct of the corporate affairs of CCF and Rebco, and the failure of Carl Neuman and Loretta Neuman to fulfill the duties incumbent upon them as officers and directors of the corporations. It further stated that in the event Carl Neuman is permitted to continue to represent Foundation, Rebco and CCF and consummate the proposed settlement agreement, the shareholders of these corporations will be seriously and irreparably damaged. The complaint thus demanded that Carl Neuman and Loretta Neuman be removed as officers and directors of CCF, Foundation and Rebco, that Carl Neuman, Foundation, Rebco and CCF be enjoined from consummating the agreement with the Chapter 11 Trustee, that Carl Neuman and Loretta Neuman be enjoined from holding any office or directorship in CCF, Foundation and Rebco, that Loretta Neuman, Michael Goldberg and/or Carl Neuman individually and/or as trustees be enjoined from voting the stock of CCF at any meeting of CCF shareholders on their behalf or that of the trust beneficiaries, or from soliciting CCF shareholders rights to vote at any meeting of shareholders, and finally, that the court order a meeting of CCF shareholders for the purpose of electing a new board of directors and officers.[4]

Simultaneous with the commencement of the state court action, Baum submitted an Order to Show Cause to the New York State Supreme Court requesting essentially the same relief as stated in the complaint. In response, Justice Santella ordered that CCF be enjoined and stayed from disposing of any CCF assets except in the normal course of business or pursuant to a direction of a court of competent jurisdiction, pending determination of the motion.[5] The pending Bankruptcy Proceeding was mentioned in both the complaint and the affidavit in support of the order to show cause.

Subsequently, on August 17, 1989, Carl Neuman presented an order to show cause with a temporary restraining order to Judge Abram requesting that the court hold Morris Ehrlich[6] and Irving Baum in contempt for violating the automatic stay provisions of Section 362(a), awarding Carl Neuman actual damages including costs, attorney's fees and punitive damages, directing that Foundation has full authority to proceed with the settlement agreement notwithstanding the order of the state court, and enjoining Morris Ehrlich and Irving Baum and any one acting on their behalf from taking any action which would impede implementation of the Settlement Agreement.

The court granted the temporary relief on August 17, and held hearings on August 17, September 25, and November 28 to decide the motion. Although Mr. Leschins withdrew the order to show cause from the state court on August 22 and agreed to discontinue the state court action without prejudice, Judge Abram ordered that Morris Ehrlich and Baum be enjoined from interfering with implementation of the settlement agreement, that the motion for contempt be granted, that the Foundation had full authority to proceed with the settlement and that Irving Baum and Preston Leschins[7] pay to Carl Neuman actual damages including costs and attorneys fees. As already noted, only the contempt order and fine are appealed.

---

**4.** There was also a provision that CCF be directed to submit to plaintiff a list of all CCF shareholders with addresses no less than 30 days prior to any scheduled meeting.

**5.** The Settlement Agreement included provisions that would affect the disposition of CCF assets.

**6.** Appellees contend that Mr. Ehrlich was really the plaintiff in interest in the state court action and acted through Baum and Leschins in an attempt to stop the consummation of the settlement agreement. This contention is strenuously opposed by Ehrlich, Leschins and Baum. Though Mr. Leschins and Mr. Ehrlich share the same office space, and both Mr. Ehrlich and Mr. Baum were creditors of the debtor and had interests in the settlement, there is no hard evidence that the allegation is true.

**7.** Even though the motion requested Judge Abram to award sanctions against Ehrlich, she declined to do so since he had not been a plaintiff in the state court action and did not represent such a plaintiff. Instead, she scratched out his name and substituted that of Preston Leschins. Ehrlich's name remained in the order in so far as it enjoined him and Baum from interfering with the Settlement Agreement.

## DISCUSSION

11 U.S.C. § 362 provides for the automatic stay of any and all proceedings against a debtor once a bankruptcy petition is filed. The purpose of the stay is to protect the debtor, to give him a breathing spell from his creditors. It stops all collection efforts, all harassment and all foreclosure actions and permits the debtor to attempt a repayment or reorganization plan. *Budget Service Company v. Better Homes of Virginia,* 804 F.2d 289 (4th Cir. 1986). The consequences of violation of the automatic stay provisions are set out in section 362(h). That section provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Bankruptcy judges may enforce these sanctions without reference to a finding of civil contempt. *Budget Service Company,* 804 F.2d at 293.

To assess damages under section 362(h), the bankruptcy court must find that there was an actual violation of the stay, and that this violation was "willful."

Appellants argue that the action commenced in state court was not one subject to the automatic stay because it was a shareholder's derivative action, it sought injunctive relief and not money damages, and was against the debtor is in his representative capacity of a corporation in which neither he nor the bankruptcy estate had an interest.[8] They further argue that if the court finds that the action violated the stay, that it was not a willful violation as required by section 362(h). Appellees argue that the suit's primary objective was to stop the debtor Neuman from proceeding with the bankruptcy settlement and that it was thus a blatant and willful violation of the stay.

As to whether a shareholder's derivative action violates the stay, at least one court has held that a shareholders' derivative action brought on behalf of a corporate debtor violates the stay. *In re Interpictures, Inc.,* 86 B.R. 24 (Bankruptcy E.D.N.Y.1988);[9] *see also Mitchell Excavators by Mitchell v. Mitchell,* 734 F.2d 129 (2d Cir. 1984) (while normally the fiduciary obligation of officers, directors and shareholders is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee).[10] In the case at hand, however, the corporation is not the debtor. The parties did not cite and this court could not find any case which addressed the specific issue whether a shareholder derivative action violates the automatic stay if the corporation is not the debtor, but only one closely related to the debtor.

It is well established that Section 362(a) is not available for the benefit of nonbankrupt codefendants because such an extension of the stay does not promote the underlying purposes of the automatic stay, debtor/creditor protection. *See e.g. Teachers Insurance and Annuity Association of America v. Butler,* 803 F.2d 61, 65 (2d Cir.1986); *In re Garnett,* 47 B.R. 170 (Bankr.E.D.N.Y.1985). However, several courts have recognized that in very limited situations a Section 362 stay may apply to actions against nonbankrupt defendants. *See Teachers Insurance,* 803 F.2d at 65, *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1147 (5th Cir.1987).[11] These courts

---

**8.** Though the complaint did mention Carl Neuman and Loretta Neuman "individually and in their capacity as trustees ...," the allegations primarily concerned the Neumans' relations with CCF and Rebco, neither of which was a corporate debtor.

**9.** In *In re Interpictures, Inc.,* the debtor's shareholder applied for an order to show cause, seeking examination of various entities, removal of fiduciaries, and recovery of assets on behalf of the debtor. The Court held that the right to redress wrongs inflicted upon the corporate debtor is the property of the estate and there-

fore any attempt by a shareholder to exercise those rights derivatively violates the automatic stay.

**10.** This case did not concern an alleged violation of the stay, but rather concerned a derivative action brought by a shareholder in the bankruptcy court after the corporation had filed a bankruptcy petition.

**11.** In *Matter of S.I. Acquisition, Inc.,* the bankrupt debtor moved to show cause why the creditor should not be held in contempt for serving interrogatories on debtor's nonbankruptcy code-

have reasoned that a nonbankrupt codefendant may be protected by the automatic stay if extension of the stay contributes to the debtor's efforts of rehabilitation or the debtor and nonbankrupt are closely related. One court has noted that:

> in order for relief for such non-bankrupt defendants to be available under 362(a)(1), there must be "unusual circumstances" and certainly "something more than the mere fact that one of the parties to the lawsuit has filed Chapter 11 bankruptcy must be shown. This unusual situation, it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."

*A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 at 999 (4th Cir.1986) (quoting in parts *In re Johns–Manville Corp.*, 26 B.R. 405, 410 (Bankr.S.D.N.Y.1983); *see also Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir.1987).

Given the relationship between CCF, Rebco, the Foundation and the Neumans, specifically that the Neumans own approximately 78% of the CCF stock and that Rebco and Foundation are wholly owned subsidiaries of CCF, it appears that there is such an identity between the entities as to render the state court suit in violation of the stay. This conclusion is supported by the fact that any relief in the state court would necessarily affect the settlement agreement approved by the Bankruptcy Court. It should also be noted that despite Ehrlich's and Baum's contentions to the contrary, the complaint names Carl Neuman both individually and as trustee. Thus, we agree with the Bankruptcy

Court's determination that the state action did violate the stay.

■ The more difficult question is whether the violation was willful.[12] The Second Circuit has held that any deliberate act taken in violation of an automatic stay that the violator knows to be in existence, justifies an award of actual damages. *In Re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir.1990). An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to Section 362(h). *Id.* As the court stated in *In Re Crysen/Montenay Energy Co.*: "[t]his standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations." *Id.* at 1105. However, that court, the first to establish a Second Circuit standard for willfulness, declined to apply that standard to the facts of the case. It reversed the award of sanctions imposed by the Bankruptcy Court, reasoning that the standard governing Section 362(h) had theretofore been uncertain, and the parties could not have known at the time they commenced the action that, despite their good faith belief that the action did not violate the stay, they were subjecting themselves to sanctions by not first seeking a declaration from the Bankruptcy Court.

■ Baum's and Leschins' state court action was instituted in August 1989, several months before the Second Circuit decided *In Re Crysen/Montenay Energy Co.* and so clarified the standard for willfulness under section 362(h). Thus, if we find that Baum and Leschins had a good faith belief that their efforts did not violate the stay,

---

fendants, its parent corporation and principal, in state court action based on theory of piercing the corporate veil. The court held that creditors action did violate the stay even though the proceedings were not directly against the debtor.

**12.** There has been much disagreement among courts as to the standard for willfulness under Section 362(h). Courts have most frequently disagreed as to the relevancy of "good faith" in determining willfulness. *See e.g. In re AM Inter-*

national, Inc.*, 53 B.R. 744 (Bankr.M.D.Tenn. 1985) (creditors should file first with the Bankruptcy Court to determine the applicability of the automatic stay, and those who act without court authorization do so at their peril); *In re Bain*, 64 B.R. 581 (W.D.Va.1986) (award of attorneys' fees reversed because Bankruptcy Court had not determined that the debtor was injured or that the creditor, although plainly wrong, had acted willfully).

we should reverse the Bankruptcy Court's award of sanctions.

In assessing the good faith of Baum and Leschins, several points are clear. First, it is undisputed that Baum and Leschins knew of the bankruptcy petition and were aware of the stay. The record indicates that as soon as Judge Abram ordered a stay of the state court proceedings, Leschins and Baum consented to the stay and immediately complied with it. They immediately withdrew from the state court the motion for an order restraining the debtor from acting on behalf of the corporation and prepared a stipulation to discontinue the state court action without prejudice. This stipulation was offered to appellees who refused to sign it unless appellants discontinued the action with prejudice. Baum and Leschins also informed the state court in both the complaint and affidavit in support of the order to show cause that there was a proceeding in Bankruptcy Court.

Also relevant in assessing good faith on the part of Leschins and Baum is the lack of clarity of the law regarding shareholder's derivative actions brought against corporations related to the debtor. Judge Abram herself stated on the record that "[t]here is a possibility that under 362, in an individual chapter 11 case, that that action was not subject to the 362 stay. There is a possibility of that." Transcript at 16. However, she went on to say, "I do not believe that you [Mr. Leschins] or Mr. Ehrlich undertook to do any particularly sophisticated research into the bankruptcy cases on that issue, and therefore, I don't really believe that either one of you particularly could articulate to me the theories under which it is not a 362 violation ... There is little doubt that that action was taken for the precise purpose of doing by indirection something which you could have done by direction." Transcript at 18.

Aside from this conclusory remark, there is no evidence in the record to indicate that the sole reason for the action was to circumvent the Bankruptcy Court's authority. In fact, after reiterating to the court that

their state court action was not meant as any offense to Judge Abram's orders, Mr. Leschins stated on the record that he believed that some of the allegations in the state court complaint could be maintained after the Bankruptcy Court proceedings had been concluded. Transcript at 18. Although Judge Abram responded to his remarks by saying that "You don't know enough about bankruptcy to know what you are talking about," it is not clear that the issues were within the sole jurisdiction of the Bankruptcy Court, particularly given that CCF, Foundation and Rebco were not debtors and were subject to the Bankruptcy Court's jurisdiction only by virtue of an adversary proceeding brought against them by the trustee.

Finally, it should be noted that nowhere in the record did the Bankruptcy Court make a specific finding of willfulness. There is also no indication that any evidence was offered in support of the damages requested and awarded. Appellee's attorney stated only that "in light of the fact that I think maybe an hour's worth of research could have avoided three court appearances that were made solely for this purpose, I am requesting some form of sanctions ...," transcript at 40, there was no evidence of attorney's hours, fees or costs, or the reasonableness of such fees and costs. It should also be noted that attorney Leschins' name was substituted on the order awarding sanctions and holding the parties in contempt for that of Ehrlich just before the order was signed. Mr. Leschins was not at the particular hearing at which the order was signed and did not have an opportunity to defend himself. He had submitted an affidavit of actual engagement to the court via Mr. Ehrlich and it appears from the record that the affidavit was effectively ignored.[13]

In conclusion, the Court finds that there is no evidence in the record of bad faith on the part of Leschins and Baum that would enable the court to award sanctions under Section 362(h) for an action brought before the Second Circuit's clarification of the law in *In Re Crysen/Montenay Energy Co.* We thereby reverse the Bankruptcy

---

**13.** Mr. Leschins stated in his affirmation the he was before Justice Kelly and suggested that a call to Justice Kelly at a given phone number would release him from Rockland County and that he could be in the Bankruptcy Court in one hour. He had no opportunity to be heard.

Court's award of sanctions against Leschins and Baum.

■ As to the Court's order holding appellants in contempt, we first note that a Bankruptcy Court's power to hold a party in contempt is unclear and the subject of much dispute. We also note that it is unclear from the record or Judge Abram's order on what basis Judge Abram found the parties in contempt or even whether she found them in civil or criminal contempt.

Assuming that Judge Abram held the appellants in contempt for violating the automatic stay, we decline to address the broader question of her constitutional authority to issue the contempt order and rest our decision on the well established proposition that "where the violation of the stay is inadvertent, contempt is not an appropriate remedy." 2 Collier on Bankruptcy, 362.11, *In re Smith Corset Shops, Inc.,* 696 F.2d 971 (1st Cir.1982); *Smith v. First America Bank, N.A.,* 876 F.2d 524 (6th Cir.1989). Finding inadequate evidence in the record that the parties acted willfully and in bad faith, we conclude that their actions were inadvertent. We thus reverse the Bankruptcy Judge's order of contempt.

SO ORDERED.