**ALGEMENE BANK NEDERLAND, N.V., Plaintiff,**

v.

**HALLWOOD INDUSTRIES, INC., and Retail Acquisition Corporation, Defendants.**

Civ. A. No. 91–499.

United States District Court, W.D. Pennsylvania.

Oct. 30, 1991.

Patricia L. Dodge, Pittsburgh, Pa., for plaintiff.

Lori Ann Arena, Pittsburgh, Pa., for defendant Hallwood Ind.

Ellen S. Cappellanti, Charleston, W. Va., for defendant Retail Acquisition Corp.

MEMORANDUM

D. BROOKS SMITH, District Judge.

Before the Court is plaintiff Algemene Bank Nederland, N.V.'s ("Algemene") motion for summary judgment against defendant Hallwood Industries, Inc. ("Hallwood"). Algemene is a Netherlands corporation which has brought this collection action under this court's diversity jurisdiction to recover approximately $238,000 that it alleges Hallwood and Retail Acquisition Corporation ("RAC"), Delaware corporations with their principal places of business in New York, owe to Algemene under the terms of a note executed by defendant Hallwood's predecessor corporation, Hecks, Inc. ("Hecks"). Because there is no disputed issue of fact, and because Algemene is entitled to judgment as a matter of law, Algemene's motion will be granted.

I.

On or about September 28, 1989, Hecks executed a promissory note to Algemene for the principal amount of $247,843.51, with interest from October 1, 1989 at 11.-25% per annum. Repayment was due in 48 level monthly payments beginning October 1, 1990; upon 30 days delinquency in a monthly payment, the principal balance and accrued interest was to become immediately due. Hallwood does not dispute the authenticity of the note, and does not suggest that there was a failure of consideration.

In June, 1990, Hecks was merged into Hallwood and Hallwood assumed all of Hecks' obligations, including the promissory note. In September, 1990, some of Hallwood's creditors, Algemene, Hallwood, and RAC executed an Assignment and Assumption Agreement which assigned Hallwood's repayment obligations on the note to RAC. In Paragraph 5 of the Assignment and Assumption Agreement, Algemene and the other creditors retained the right to pursue Hallwood for payment:

It is however understood and agreed that the Creditors by the consent granted herein do not release Hallwood from the

performance or payment of the Obligations. The Creditors reserve for themselves, their successors and assigns, all rights and remedies against Hallwood and all other persons liable in whole or in part for the payment or performance of the Obligations and hereby retain and reserve all right to any and all security for payment of the Notes, and do further reserve the right to name Hallwood as a party defendant to any action brought to foreclose any Deed of Trust.

The monthly payment due to Algemene on February 1, 1991, according to Algemene's Vice President's uncontradicted affidavit, was not made. On March 4, 1991, Algemene demanded payment of the outstanding principal and interest, at that time $231,700.02, by letters directed to RAC and to Hallwood. No payments have been made by either Hallwood or RAC since that time.

After Algemene filed this suit in April, 1991, Hallwood and other creditors of RAC filed a petition to force RAC into Chapter 7 bankruptcy proceedings; that action has since been converted to a Chapter 11 proceeding, but the automatic bankruptcy stay, 11 U.S.C. § 362, remains in effect as to RAC.

Hallwood raises two objections to entry of judgment in favor of Algemene for the uncontested principal and interest due: (1) that the automatic bankruptcy stay in favor of RAC shields it as well, and (2) that Paragraph 2(iii) of the Assignment and Assumption Agreement creates a disputed issue of fact as to Hallwood's liability to Algemene. Neither argument is convincing.

A.

■ Paragraph 2 of the Assignment and Assumption Agreement provides:

2. As of the date hereof, RAC hereby (i) confirms its acceptance of the assignment, sale, transfer and conveyance of the Collateral from Hallwood pursuant to the Assignment, (ii) assumes the performance and payment of the Obligations, including, without limitation, Hallwood's obligation to pay interest accrued and accruing on the obligations on and after the date hereof, and agrees to be bound thereon as fully as if RAC were originally bound thereon, and (iii) otherwise substitutes itself for Hallwood as the promisor under the notes, and trustor or obligor, as the case may be, under the Loan Documents.

Hallwood argues that this provision "clearly intends that the primary obligor and first in line to be pursued as a debtor to the plaintiff shall be [Retail Acquisition Corporation]." While true, Hallwood's interpretation is irrelevant because Algemene has attempted to recover from RAC, but is presently unable to do so due to the involuntary bankruptcy petition filed by, among others, Hallwood. Under those circumstances, the provisions of Paragraph 5 that Hallwood remains liable to Algemene become applicable.[1]

Hallwood additionally suggests that the extent to which Algemene has attempted to recover from RAC, and Algemene's potential for recovery in the bankruptcy court, are issues of fact which must be resolved. It certainly is true that Hallwood would be entitled to a credit for any monies subsequently paid by RAC but Algemene has submitted an uncontradicted affidavit that no monies have been received from RAC. If Hallwood had contrary information, it could have presented it. *See In re B.D. International Discount Corp.*, 701 F.2d 1071, 1077 n. 11 (2d Cir.), *cert. denied*, 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983). Hallwood's argument that these issues of fact are material because Alge-

---

**1.** Hallwood's argument that the general provisions of Paragraph 5 are controlled by the more specific ones of Paragraph 2(iii) is contrary to the basic principle of contract interpretation that the provisions of a contract should be read to give effect to all of them. Paragraph 2 plainly accomplishes the desire of the parties to the agreement to bind RAC; Paragraph 5 makes explicit that Hallwood is not released thereby. Neither provision prescribes that Hallwood may not be liable to Algemene before all possibilities of recovery against RAC are exhausted. Hallwood's argument further is contrary to common sense principles of draftsmanship; few contracts begin with specifics and proceed to generalities.

mene must first recover all that it can from RAC before it can pursue Hallwood is, as stated above, not supported by the language of the Assignment and Assumption Agreement.

### B.

### 1.

■ Hallwood argues that the stay of actions against RAC under the Bankruptcy Code extends to it because a judgment against it will in effect be a judgment against RAC due to the latter's absolute duty to indemnify Hallwood. *See* Assignment and Assumption Agreement, Paragraph 8. Although in "unusual circumstances" a bankruptcy court may stay proceedings against non-debtors in order to preserve the assets of an estate, *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), this matter is not an unusual matter, nor is this Court the bankruptcy court. Hallwood does not suggest that RAC has requested a stay of the instant action against Algemene in the bankruptcy court, a stay which if granted could be reviewed under normal bankruptcy procedural rules. *See Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1146 n. 3 (5th Cir.1987) (bankruptcy court's discretionary stay of actions against nonbankrupt entity authorized by, *inter alia,* 11 U.S.C. § 105 and by general equitable powers). Hallwood implicitly seeks an indefinite *de facto* and therefore unreviewable stay of this action pending the reorganization of RAC. Hallwood asserts that the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, requires this.

Section 362 of the Bankruptcy Code, 11 U.S.C. § 362 (West 1991 Supp.) provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employ-

ment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\*     \*     \*     \*     \*     \*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

Because the purposes of the stay provisions are to help conserve the assets of a debtor who may be able to reorganize, and to put all creditors of the same class on an equal footing, the Fourth and Fifth Circuits have interpreted subsection (a)(1) to allow stays against a debtor's nonbankrupt codefendants "if extension of the stay contributes to the debtor's efforts of rehabilitation or the debtor and nonbankrupt are closely related." *Matter of S.I. Acquisition,* 817 F.2d at 1147. *Contra, Teachers Ins. and Annuity Ass'n of America v. Butler,* 803 F.2d 61, 65 (2d Cir.1986); *Otoe County National Bank v. W & P Trucking, Inc.,* 754 F.2d 881, 883 (10th Cir.1985); *Matter of Lockard,* 884 F.2d 1171, 1179 (9th Cir. 1989). Subsection (a)(3), by its very terms, stays "any act" to obtain property of the debtor, whether directly or through a third party. The Fourth and Fifth Circuits have interpreted this provision to allow the stay of actions against a nonbankrupt defendant where the judgment against the defendant would in essence be a judgment against property of the bankruptcy estate. *See A.H. Robins Co., Inc.,* 788 F.2d at 1001–02 (staying actions against the products liability insurer of the manufacturer of the Dalkon Shield); *Matter of S.I. Acquisition,* 817 F.2d at 1150–51 (staying actions brought against defendants solely on grounds that they are controlling persons of bankrupt debtor).

The Court of Appeals for the Third Circuit has not yet spoken on the issues addressed in *Matter of S.I. Acquisition* and *A.H. Robins Co., Inc. See Gold v. Johns–Manville Sales Corp.,* 723 F.2d 1068, 1073

(3d Cir.1983). *But See In re Magnus Harmonica Corp.*, 233 F.2d 803 (3d Cir.1956) (Bankruptcy Act case). There are strong economic arguments to be made against the broad interpretation of the language of Section 362(a) urged by Hallwood. Hallwood's position, however, would not be sustainable even if this Court were to adopt the approach taken by the circuits approving bankruptcy stays of actions against nondebtor defendants.

2.

Addressing subsection (a)(1) first, it is clear that a *de facto* stay of the action against Hallwood does not contribute to the potential reorganization of Retail Acquisition Corporation. If Algemene cannot recover against Hallwood until it obtains whatever claim would have been allowed in RAC's chapter 7 liquidation or will be paid under whatever plan of reorganization is confirmed under chapter 11, that does not aid RAC's in any way. If anything, allowance of judgment against Hallwood now might assist RAC's reorganization by replacing the claims of Algemene, a clearly hostile creditor, with Hallwood's claim for indemnification. RAC would be able to assert against Hallwood not only the defenses to the original claim by Algemene but also any additional defenses involved in the indemnification agreement between Hallwood and RAC.

Second, the debtor and the nonbankrupt defendant are not "closely related" in the sense contemplated by the circuits extending the stay provisions to nonbankrupt defendants,[2] merely by virtue of the indemnification agreement between Hallwood and RAC. *See Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir.1988), and *Browning Seed, Inc. v. Bayles*, 812 F.2d 999 (5th Cir.1987). In *A.H. Robins Co., Inc.*, the nonbankrupt defendant was the bankrupt's insurer against which suits had been commenced under state direct-action statutes; in *Matter of S.I. Acquisition*, the nonbankrupt defendants were allegedly controlling persons of a closely held corporation. *See also In re MortgageAmerica*, 714 F.2d 1266 (5th Cir. 1983).[3]

3.

Turning to subsection (a)(3), the analytic framework summarized by the Fifth Circuit in *Matter of S.I. Acquisition*, 817 F.2d at 1150, for stays of actions against nonbankrupt defendants provides:

(1) a section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor;

(2) a section 362(a)(3) stay applies to a cause of action that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor; and

(3) in applying the above rules we do so by keeping in mind the Bankruptcy Code's general policies of securing and preserving the debtor's property and of ensuring equal distribution of the debtor's assets to similarly-situated creditors.

Obviously, Algemene's claim against Hallwood is in no sense property of RAC. *Cf. Matter of S.I. Acquisition* (action against corporation's controlling persons under alter ego theory is, under Texas law, property of the corporation). Hallwood also does not suggest that its assets are actually RAC's or are controlled by it; it merely argues that any recovery by Algemene against it will result in an equivalent indemnity claim by it against RAC's bankruptcy estate. Accordingly, subsection (a)(3) is inapplicable.

III.

Hallwood, in effect, seeks relief from its obligor status on a note by positioning itself behind the bankruptcy proceedings of the assignee of the note. The parties to the Assumption and Assignment Agreement did not contract for such a result. To impose such a result as a matter of law would not only be unwarranted but would

---

**2.** If Hallwood were closely related to RAC, Hallwood's involuntary bankruptcy petition filed against it could be described as bordering on the fraudulent.

**3.** I specifically reject the dictum stated by the Fifth Circuit in *A.H. Robins Co., Inc.*, 788 F.2d at 999–1000, holding a stay permissible under subsection (a)(1) based solely on the existence of an indemnification agreement.

also disrupt orderly credit markets, because as between creditor and surety, the surety, almost by definition, is the one who ought to bear the risk of the debtor's default. *See Credit Alliance Corp.*, 851 F.2d at 122.