2000 ND 220

**SUPERPUMPER, INC., Plaintiff
and Appellee,**

v.

**NERLAND OIL, INC., Defendant.**

**West Fargo Truck Stop,
Inc., Appellant.**

No. 20000103.

Supreme Court of North Dakota.

Dec. 21, 2000.

John J. Petrik, Pringle & Herigstad, PC, Minot, ND, for plaintiff and appellee.

Jay D. Carlson, Fargo, ND, for appellant.

KAPSNER, Justice.

[¶ 1] West Fargo Truck Stop, Inc. appealed an order confirming an arbitration decision as to it and staying the arbitration decision as to Nerland Oil, Inc. We conclude West Fargo Truck Stop and Nerland Oil have such an identity of interest that Nerland Oil's pending bankruptcy petition and the automatic stay of bankruptcy law applies to confirmation of the arbitration decision as to West Fargo Truck Stop. We reverse the order and remand with instructions to vacate confirmation of the arbitration decision as to West Fargo Truck Stop.

I

[¶ 2] In 1995, Superpumper, Inc., an entity that owns and operates convenience stores in various locations, purchased the Dakota Fuel Stop in Jamestown, North Dakota, from Nerland Oil for $1,829,332. Superpumper's "offer to purchase" included "real property, buildings, equipment and products supply" and was "subject to a supply and freight agreement to be executed by [Superpumper] in a form acceptable to [Nerland Oil]." Superpumper and Nerland Oil allocated $1,000,000 of the purchase price to real property, $250,000 to equipment, and $579,332 to a "freight agreement" and an "exclusive requirements supply and freight agreement" between Superpumper and an affiliate of Nerland Oil, West Fargo Truck Stop. Under the "exclusive requirements supply and freight agreement," Superpumper agreed to use West Fargo Truck Stop as the exclusive supplier and hauler of petroleum products to the Dakota Fuel Stop.

Under the "freight agreement," Superpumper agreed to have West Fargo Truck Stop haul petroleum products to a Superpumper station in Belfield, North Dakota. For purposes of the purchase agreement, the Belfield freight agreement was assigned a value of $206,904 and the Dakota Fuel Stop exclusive requirements supply and freight agreement was assigned a value of $372,428.

[¶ 3] As part of the purchase, Superpumper executed a $350,000 promissory note, secured by a second mortgage on the real property, in favor of Nerland Oil. The offer to purchase, promissory note, and second mortgage did not include an arbitration clause. Both the Belfield freight agreement and the Dakota Fuel Stop exclusive requirements supply and freight agreement contained similar clauses requiring binding arbitration of any disputes under those agreements.

[¶ 4] A dispute arose between Superpumper and Nerland Oil regarding processing of credit card receivables for Dakota Fuel Stop. Superpumper sued Nerland Oil, seeking quiet title to the Dakota Fuel Stop real property, or specific performance to satisfy and release Superpumper's promissory note and second mortgage to Nerland Oil. Superpumper also sought payment for credit card receivables Nerland Oil had failed to remit to Superpumper. Nerland Oil answered, identifying itself and West Fargo Truck Stop as defendants and third-party plaintiffs. The answer alleged Superpumper's complaint failed to join all necessary parties, including West Fargo Truck Stop, and included a counterclaim alleging Superpumper breached the Belfield freight agreement and the Dakota Fuel Stop exclusive requirements supply and freight agreement. Nerland Oil and West Fargo Truck Stop sought to compel arbitration of both supply and freight agreements and to stay Superpumper's claims pending arbitration. Nerland Oil and West Fargo Truck Stop

moved for joinder of West Fargo Truck Stop as a defendant.

[¶ 5] The district court denied the motion to join West Fargo Truck Stop as a defendant and stayed Superpumper's claims pending arbitration of both supply and freight agreements. Superpumper moved for reconsideration. Nerland Oil and West Fargo Truck Stop resisted Superpumper's motion for reconsideration and sought arbitration of the entire dispute "arising out of the breach of the purchase agreement." The court denied Superpumper's motion for reconsideration and concluded the agreements between Superpumper, Nerland Oil, and West Fargo Truck Stop were "so intertwined that it only makes sense to place the entire dispute in arbitration." The court ordered arbitration of the entire dispute.

[¶ 6] In *Superpumper, Inc. v. Nerland Oil, Inc.*, 1998 ND 144, ¶ 1, 582 N.W.2d 647, we dismissed Superpumper's appeal from the order compelling arbitration. We concluded the order was not appealable under either the Uniform Arbitration Act, N.D.C.C. ch. 32–29.2, or the Federal Arbitration Act, 9 U.S.C. §§ 1–16. *Superpumper* at ¶ 1.

[¶ 7] In August 1999, a three-member arbitration panel decided Nerland Oil owed Superpumper $348,856.26 for credit card receivables, and that debt was subject to a $10,933.92 setoff against $359,790.18 due on Superpumper's promissory note to Nerland Oil. In a two-to-one decision, the arbitration panel decided Superpumper and Nerland Oil had orally modified the Belfield freight agreement and, as modified, the agreement had been "suspended" since October 26, 1996. The majority of the panel decided there was no breach of the Belfield freight agreement.

[¶ 8] In October 1999, Superpumper moved for confirmation of the arbitration decision. On November 7, 1999, Nerland Oil filed a voluntary petition for bankruptcy under chapter 7 of the United States Bankruptcy Code. Nerland Oil resisted confirmation of the arbitration decision because of its bankruptcy petition, and West Fargo Truck Stop moved to vacate the arbitration decision and to remand to the panel for rehearing on the Belfield freight agreement. The district court confirmed the arbitration decision as to West Fargo Truck Stop, but concluded it did not have jurisdiction over Nerland Oil because of its pending bankruptcy petition. West Fargo Truck Stop appealed.

## II

[¶ 9] We must initially consider the effect of Nerland Oil's bankruptcy petition on the confirmation of the arbitration decision. Under 11 U.S.C. § 362(a)(1) and (3),[1] the filing of a petition for bankruptcy ordinarily operates as an automatic stay of the commencement or continuation of any action against a debtor or against property of the estate. *See, e.g., Kessel v. Peterson*, 350 N.W.2d 603, 604 (N.D.1984). Upon the filing of a bankruptcy petition, the stay is automatically effective,[2] *see* 3 Collier on Bankruptcy ¶ 362.02 (15th Ed. Rev.2000),

---

1. 11 U.S.C. § 362(a), provides, in part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
. . . .
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

2. In addition to the automatic stay, a bankruptcy court may affirmatively stay proceedings under its broad discretionary powers in 11 U.S.C. § 105. *See Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 n. 3 (5th Cir.1987).

and applies to arbitration proceedings against a debtor. *See In re Drexel Burnham Lambert Group, Inc.,* 160 B.R. 508, 511–12 (1993). Whether a proceeding is against a debtor is determined by the debtor's status in the initial proceeding, regardless of whether the debtor subsequently becomes an appellant or an appellee. *See Kessel,* at 604–05.

[¶ 10] The automatic stay of 11 U.S.C. § 362(a)(1) ordinarily does not apply to actions against non-debtor codefendants. *Teachers Ins. Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir.1986); *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1329–30 (10th Cir.1984); *Williford v. Armstrong World Indus., Inc.,* 715 F.2d 124, 126–27 (4th Cir.1983); *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1196–97 (6th Cir.1983); *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 544 (5th Cir.1983); *Austin v. Unarco Indus., Inc.,* 705 F.2d 1, 4–5 (1st Cir.); *Pitts v. Unarco Indus., Inc.,* 698 F.2d 313, 314 (7th Cir. 1983). *See* 3 Collier on Bankruptcy at ¶ 362.03[3][d].

[¶ 11] Some courts, however, have recognized the automatic stay of 11 U.S.C. § 362(a)(1) applies to actions against non-debtor codefendants in "unusual circumstances." *See Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1147 (5th Cir.1987); *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986); *In re Neuman,* 128 B.R. 333, 336–37 (S.D.N.Y.1991); *Marroquin v.. D & N Funding Inc.,* 943 S.W.2d 112, 115 (Tex.App.1997); *Belington Bank v. Masketeers, Co.,* 185 W.Va. 564, 408 S.E.2d 316, 320 (1991).

[¶ 12] In *Piccinin,* 788 F.2d at 996, an action against Robins, the manufacturer of the Dalkon Shield, was stayed by its bankruptcy filing. Plaintiffs sought to sever their action against Robins and proceed against codefendants who were entitled to indemnification from Robins. *Id.* The Fourth Circuit Court of Appeals described the situation as one involving "unusual circumstances" which justified a stay of proceedings against the non-debtor codefend-

ants. *Id.* at 999. The court explained "unusual circumstances" exist when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* The court also explained 11 U.S.C. § 362(a)(3), *see* fn.1, stays any action against a debtor or third party to obtain possession or exercise control over property of the debtor. *Piccinin,* at 1001. The court said the debtor's insurance policies, which would be used to satisfy judgments against the non-debtor codefendants, were property of the estate and any action to diminish that property was subject to the automatic stay. *Id.*

[¶ 13] In *Neuman,* 128 B.R. at 337, a bankruptcy court held a state court shareholder derivative action violated the automatic stay, because an individual bankrupt debtor, Neuman, owned 78% of the stock of a non-debtor codefendant, CCF, and two other non-debtor codefendants were wholly-owned subsidiaries of CCF. The court concluded there was such an identity of interests between the entities that any relief in state court would necessarily affect a bankruptcy settlement. *Id.*

[¶ 14] In *Marroquin,* 943 S.W.2d at 115, the Texas Court of Appeals held a forcible detainer action against a husband and wife to evict them from property was automatically stayed by the wife's bankruptcy petition. The court concluded because the husband and wife had such an identity of interest and the action sought control over the debtor's property, the automatic stay applied to the forcible detainer action against the husband. *Id.*

[¶ 15] Here, the arbitration panel acknowledged the unity of interest between West Fargo Truck Stop and Nerland Oil:

The Nerland entity which executed the Freight Agreement was West Fargo Truck Stop. Although the agreement

identified West Fargo Truck Stop as being "in the business of supplying and shipping petroleum and petroleum products in the State of North Dakota and elsewhere," West Fargo Truck Stop was not in that business. In fact, West Fargo Truck Stop did not own any trucks, nor was it a "jobber." Section 5 of the Freight Agreement provided that the rights and responsibilities of the parties could not be assigned without the written consent of the other party. It appears that West Fargo Truck Stop assigned all of its responsibilities under the Freight Agreement, because it was not able to perform the agreement directly. Therefore, the hauling of the fuel products was done by Nerland Transport, Inc. through Nerland Oil. The invoices sent to Superpumper for the hauling under the agreement were sent by Nerland Oil. Mr. Nerland indicated during his testimony that the involvement of West Fargo Truck Stop was because of the IRS debt owed by Nerland Oil. If that debt had not existed, West Fargo Truck Stop would not have been involved in the Freight Agreement. The involvement of West Fargo Truck Stop was for the purpose of attempting to shift revenue from Nerland Oil.

[¶ 16] The arbitration decision refers to the Belfield freight agreement as a contract between Superpumper and Nerland Oil. Superpumper's offer to purchase the Dakota Fuel Stop from Nerland Oil specifically said the offer was subject to a freight agreement executed by Superpumper in a form acceptable to Nerland Oil. Although the freight agreement was executed by Superpumper and West Fargo Truck Stop, Nerland Oil and West Fargo Truck Stop were both operated by Brent Nerland as president. Nerland Oil and West Fargo Truck Stop have been represented by the same attorney throughout this proceeding. For purposes of the arbitration proceeding, West Fargo Truck Stop and Nerland Oil are, in effect, the same party and the contractual rights under the freight agreement are part of the larger contractual rights between Superpumper and Nerland Oil for the purchase of the Dakota Fuel Stop. The district court order compelling arbitration recognized that relationship when it stated the agreements between Superpumper, Nerland Oil, and West Fargo Truck Stop were "so intertwined that it only makes sense to place the entire dispute in arbitration." The court confirmed the arbitration decision as to West Fargo Truck Stop and decided the proceedings against Nerland Oil were stayed. The court's decision effectively provides for piecemeal litigation of the arbitration decision. We have a strong policy against piecemeal litigation. *See, e.g., Union State Bank v. Woell,* 357 N.W.2d 234, 237 (N.D.1984) (stating N.D.R.Civ.P. 54(b) intended to avoid piecemeal disposal of multi-claim litigation).

[¶ 17] When the automatic stay of 11 U.S.C. § 362(a)(1) and (3) is considered with our finality jurisprudence, we conclude the district court erred in confirming the arbitration decision as to West Fargo Truck Stop and deciding the proceeding was stayed as to Nerland Oil. We conclude the unity of interest between Nerland Oil and West Fargo Truck Stop and the interrelationship of the Belfield freight agreement with the purchase agreement, coupled with our policy against piecemeal litigation, automatically stayed the entire arbitration decision pending Nerland Oil's bankruptcy proceeding.

[¶ 18] We reverse the district court order and remand with instructions to vacate confirmation of the arbitration decision as to West Fargo Truck Stop.

[¶ 19] VANDE WALLE, C.J., SANDSTROM, NEUMANN, MARING, JJ., concur.