Payne v. U.S. Airways, No. S0596-02 CnC  (Norton, J., July 20, 2005)


[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                              Docket No. S0596-02 CnC


PAYNE

v.

U.S. AIRWAYS


ENTRY

This case is about the scope of an automatic stay under the United States Bankruptcy Code for non-debtor parties.  Plaintiff Kimberly Payne who has agreed to previous stays in this case has removed defendant U.S. Airways, the sole party in bankruptcy, in an attempt to jumpstart her stalled litigation.  The remaining individual defendants move, nevertheless, to stay any further litigation because they claim that an indemnity issue unites their identity with debtor party, U.S. Airways.  Thus, they argue, the automatic stay of 11 U.S.C. § 362 should be extended to them.

The general rule is that an automatic stay under 11 U.S.C. § 362 applies only to the debtor and not to any co-defendants. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986); see also Note, Expanding the Automatic Stay: Protecting Nondebtors in Single Asset Bankruptcies, 2 Am. Bankr. Inst. L. Rev. 453, 457–58 (1994) (noting that chapters 12 and 13, unlike chapter 11, have stay provisions that explicitly extend to non-debtor parties). There are two significant reasons behind this statutory provision. The primary purpose is to give the debtor "breathing room" and a chance to re-organize and consolidate the estate. Id. This avoids a form of death-by-a-thousand-cuts where creditors take the debtor apart piece by piece while the debtor is trying to put its fiscal house in order. J. Hargrove, Relief from Stay Compendium for State Court Judges, 27 Cal. Bnkr. J. 30, 30 (2003). But, the other major purpose of § 362 is to protect creditors. By freezing access to the debtor's estate, § 362 forces all creditors to get in line according to the rules of bankruptcy and the security of their interest. Algemene Bank Nederland, N.V. v. Hallwood Industries, Inc., 133 B.R. 176, 179 (W.D.Pa. 1991); see also Seybolt v. Bio-Energy of Lincoln, Inc., 38 B.R. 123, 127 (D.Mass. 1984) (granting stay where litigation would lead to inequality amongst same class of creditors to a debtor partnership). Neither of these policies implicate co-defendants. Thus, the chapter 11 stays do not apply to them.

Because of the importance of these policies, courts apply an exception to § 362's limitations for "unusual circumstances" that require extending the automatic stay to non-debtor co-defendants. This is done primarily to preserve the function of § 362 by protecting the debtor's estate from indirect attacks. As the Fourth Circuit Court of Appeals explained in the seminal Robins case,

This 'unusual situation,' it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. . . . To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

Id.  Many of the federal circuits and state courts have accepted the reasoning of Robins and its progeny, but this acceptance has not been universal or to the extent that Robins' broad language might suggest.  See, e.g., Credit Alliance Corp. v. Williams, 851 F.2d 119, 121 (4th Cir.1988) (reaffirming the general principle that § 362 stays only apply to debtors); Teachers Ins. Annuity Ass'n v. Butler, 803 F.2d 61, 65 (2d Cir.1986) (pre-dating Robins but still regarded as a valid statement of the 2d Circuit's position), cited by Superpumper, Inc. v. Nerland Oil, Inc., 620 N.W.2d 159, 162–63 (N.D. 2000); see also Algemene Bank, 133 B.R. at 180 (criticizing and distinguishing Robins).  Still, Robins has been generally recognized by the federal circuits, and state courts have applied its standard when considering motions by non-debtor co-defendants for stays.  E.g., Superpumper, 620 N.W.2d at 163; but see In re Gruntz, 202 F.3d 1074, 1082–83 (9th Cir. 2000) (noting that although the state courts may determine whether an exception to the automatic stay applies, such findings are subject to review by the bankruptcy court).

Before discussing the specific facts of Plaintiff's case, it is worth noting how the "unusual circumstances" exception to § 362 functions.  In Robins, a case involving a class action against manufacturers of the Dalkon Shield, the court extended § 362's stay to a non-debtor insurer, whose policies were nevertheless a large part of the debtor's estate.  Robbins, 788 F.2d at 996, 999.  Other cases have extended the exception to cover co-

defendant companies owned by the debtor (<u>In re Neuman</u>, 128 B.R. 333, 336–37 (S.D.N.Y.1991)); spouses who share business assets (<u>Marroquin v.. D & N Funding Inc.</u>, 943 S.W.2d 112, 115 (Tex.App.1997)); or parties that are "closely related" through intertwined relationships (<u>Superpumper</u>, 620 N.W.2d at 163). See generally G. Ishii-Chang, <u>Litigation and Bankruptcy: the Dilemma of the Codefendant Stay</u>, 63 Am. Bankr. L.J. 257 (1989).

Despite the factual disparity and the varying approaches courts have taken, these cases have several unifying features that can be drawn out as consistent concepts involved int this type of stay. First, the cases have by and large involved significant portions of the debtor's estate. This does not mean large sums of money but rather percentages, how much of the debtor's estate is threatened by the action. E.g., <u>In re Neuman</u>, 128 B.R. at 336–37. Second, the debtors and non-debtors have shared a close relationship, either as insurer–insured or director–corporation. E.g., <u>Robbins</u>, 778 F.2d at 996, 999. Mere employment with a bankrupt company has not been held in any of the cases as enough to create this type of "identity of interest." Third and finally, the relationship has been one that was well-defined. Whether by contract or by law, these parties, debtor and non-debtor, were obligated to one another in a very specific and enforceable manner. E.g., <u>Seybolt v. Bio-Energy of Lincoln, Inc.</u>, 38 B.R. 123, 127–28 (D. Mass. 1984); see also P.Glassman, <u>Third-party Injunctions in Partnership Bankruptcy Cases</u>, 49 Bus. Law. 1081, 1089–90 (1994). Each of these three commonalities corresponds directly back to the dual policies of § 362 to shelter the debtor's estate and to keep creditors from cutting in line. By focusing on these issues, a court can look not only to the language of § 362 and cases within the "unusual circumstances" exception but to the policies behind them.

Ms. Payne's case is a civil rights case. She claims that the individual defendants, all employees of U.S. Airways and acting in that capacity, harassed her and drove her away from her job following her workers' compensation claim. Ms. Payne originally brought her suit in 2002 but voluntarily stayed it for all defendants while U.S. Airways went through its first bankruptcy. This led to a partial settlement with U.S. Airways in accordance with the bankruptcy court. After U.S. Airways emerged from bankruptcy, Ms. Payne attempted to reignite her litigation, but U.S. Airways soon re-filed for chapter 11 bankruptcy. In response, Ms. Payne has dropped her claims against U.S. Airway and is attempting to kick-start her case against the individual defendant employees.

It is these co-defendants that now seek to retain the judicial inertia through a further extension of the § 362 stay. They base their claim for a stay on two grounds. The first is that U.S. Airways has promised to indemnify and cover all litigation expenses for the co-defendants. This promise does not come from any contract or pre-existing agreement but comes from an internal review that the company conducted where it determined that the co-defendants acted in the best interests of the company and in a manner that U.S. Airways believes did not violate Ms. Payne's rights. As a result, U.S. Airways has promised through affidavits to indemnify and defend these individuals. The second ground that the co-defendants argue is the employment relationship with debtor U.S. Airways is a close relationship triggering § 362's exception. Co-defendants note that all of Ms. Payne's claims against them come from their alleged mistreatment of her in the workplace where they were also employed. They remain employed with U.S. Airways and argue that their liability stems not from their individual actions but their formal roles as supervisors and co-workers to Ms. Payne and is, thus, more about U.S. Airways.

Neither of these grounds meet the standard of an exception to § 362. To begin with the second ground, Ms. Payne has raised independent claims against the individual co-defendants that are separate from the debtor. As she notes, each of her claims have a factual and legal basis against the employee co-defendants separate and apart from U.S. Airways. These are claims based on their individual and personal actions. That these actions took place on the debtor's premises while the co-defendants were in its employ is irrelevant. Since it has been removed as a party, U.S. Airways is not directly implicated by these claims and is not subject to liability as a joint tortfeasor. The co-defendants' relationship to U.S. Airways can be separated from their actions, and the liability at issue here is not so intertwined as to raise serious questions of bringing the debtor back into the litigation.

As to the U.S. Airways' indemnity agreement, this is too weak a connection to implicate the debtor's estate. U.S. Airways' promise does not represent a contractual obligation that directly threatens its assets. This obligation, while commendable, is entirely voluntary on U.S. Airways behalf and is a gratuitous promise that it made after entering into bankruptcy without any consideration. While U.S. Airways' unequivocal nature in asserting this promise may create reliance and estoppel issues that the co-defendants could use to enforce it, this only obliges U.S. Airways to further litigation—from which it could have a legitimate § 362 stay—rather than any direct contractual connections. Cf. Robins, 788 F.2d at 996, 999 (insurance company contractually obliged to indemnify and this policy, which plaintiffs sought was a substantial portion of debtor's estate). A mere gratuitous promise to indemnify simply cannot support going beyond § 362 extending the stay to non-debtors.

In a similar vein, the tenuous nature of Ms. Payne's claim and the lack of any judgment make U.S. Airway's dire predictions implausible. At this stage in the litigation, it is unclear what liability, if any, U.S. Airways actually faces. As little or no discovery has been conducted, it is impossible to see how viable Ms. Payne's claims are. Certainly, U.S. Airways believes that Ms. Payne's claims are less than credible as it is standing by its employees and promising to defend and indemnify them against any judgments. This is probably not from altruistic tendencies but a firm belief, based on evidence, that the co-defendants are not liable for the wrong Ms. Payne alleges. To stay litigation indefinitely, based on such speculative liability does not further this case or the bankruptcy reorganization. Algemene Bank, 133 B.R. at 180 ("If anything, allowance of judgment against Hallwood now might assist RAC's reorganization by replacing the claims of Algemene, a clearly hostile creditor, with Hallwood's claim for indemnification.").

Under this argument, the co-defendants also claim that the promise to pay for the litigation is a drain on the U.S. Airways' bankruptcy estate that must be stopped by a stay in the litigation. This argument fails on two points. First, the litigation expenses at this stage of the case are hardly a substantial drain on the debtor's assets. U.S. Airways is a multi-billion dollar corporation. This litigation cannot represent even a minute, fractional percentage of that estate. As noted earlier, "unusual circumstances" almost always involve at lest a substantial percentage of the debtor's estate. E.g., Neuman, 128 B.R. at 337 (debtor's major assets were 78% of the stock of non-debtor co-defendant its wholly-owned subsidiary). These expenses simply do not rise to that level or trigger any particular concerns about U.S. Airways' assets.

More importantly, these litigation expenses should not be consider as the same type of threat that a judgment would be to the debtor's assets. These are ultimately business expenses, obligations that the debtor has taken on in the course of business. In this case, U.S. Airways is paying to protect what it considers good employees from work-related liabilities. While a judgment in this case may be an obligation against its asset, the litigation expenses are an on-going benefit to its employees. Looking at these litigation expenses otherwise leads to the illogical conclusion that U.S. Airways' health insurance premiums and worker-safety equipment should also be subject to the same type of stay as these litigation expenses. Naturally, such business expenses are not subject to a stay as they are the costs that U.S. Airways must incur to keep its planes in the air and its employees happy. As the purpose of § 362 and its exception do not apply to such business expenses—costs that keep revenue coming into the company—it cannot extend a stay to non-debtors for similar expenses. By extension, it does not create the type of intimate relationship that touches and concerns the policies of § 362. Therefore, extending a stay to co-defendants under § 362 would be inappropriate.

It is the general conclusion of this court that a § 362 stay would be inappropriate given the lack of any intimate relationship between U.S. Airways and the co-defendants that would qualify as an "unusual circumstance" under Robins. The employment and voluntary indemnity relationships as well as Ms. Payne's renewed litigation against co-defendants does not trigger any of the concerns behind § 362. U.S. Airways' bankruptcy estate is simply not threatened by this litigation at this time.

It is also entirely possible that the situation may change with further discovery and litigation.  Yet, it is fair to say that this court's primary concern is with the litigation of Ms. Payne's claims and not the rules of bankruptcy or U.S. Airway's chapter 11 filings.  While the court has the power to make such determinations, it is really the purview of the bankruptcy court, which also has the final say about the extent and scope of a § 362 stay or any other stay under the bankruptcy code.  In re Gruntz, 202 F.3d at 1082–83.  Under that court's plenary power, it can also assess other potential grounds for a stay under § 105 of the bankruptcy code and the parties' equitable positions.  Furthermore, it has the resources and information about the debtor's assets and liabilities to make a better assessment.

Co-defendants acknowledge that their questions are more properly raised in a bankruptcy court.  They have asked in the alternative to granting a § 362 stay that this court grant at least a temporary stay so that they can apply to the bankruptcy court   The court declines such a request.  There is no reason evident through this court's admittedly limited knowledge of bankruptcy law to understand how co-defendants are eligible for the limited stays under chapter 11.  Co-defendants are welcome to make such an appeal, but it would be improper to grant temporary stay for what may be either a fool's or a knight's errand.

Based on the foregoing, Defendants' Motion to Stay is Denied.

Dated at Burlington, Vermont_____, 2005.