In re Cynthia D. WILLIAMSON-BLACKMON, Debtor.

Cynthia D. WILLIAMSON-BLACKMON, Plaintiff,

v.

KIMBRELL'S OF SANFORD, NORTH CAROLINA, INC., Defendant.

Bankruptcy No. 91–3203.
Related No. 91–30566.

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 23, 1992.

Lafe E. Tolliver, Toledo, Ohio, for plaintiff.

James Lovett, Jr., Raleigh, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on the Complaint for damages based upon a willful violation of the U.S. Bankruptcy Codes' injunctive stay. At Trial, the parties had the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the testimony, the documents admitted at Trial, and the arguments of counsel, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that Kimbrell's of Sanford, North Carolina, Inc. (hereinafter Kimbrell's) has not violated either the injunctive or the automatic stay provisions of the U.S. Bankruptcy Code. 11 U.S.C. §§ 524, 362.

## FACTS

The Debtor, Cynthia Williamson–Blackmon (hereinafter Ms. Blackmon), was residing in Sanford, North Carolina with her husband and three children on October 19, 1990, when she purchased a Two Hundred and Ninety-nine Dollar ($299.00) dinette set from Kimbrell's. The purchase was made on a payment plan basis and she gave Kimbrell's a postdated (October 20, 1990) check for Fifty Dollars ($50.00) with the balance to be paid in four (4) monthly installment payments commencing November 15, 1990.

The check was written on an account at the Branch Banking and Trust Company; however, this account had been closed since May 2, 1988. At that time, the account had a negative balance of One Hundred Fourteen Dollars and Fifty-nine Cents ($114.59). Other than a November 22, 1989 payment which corrected the negative balance, there had been no activity recorded against the account after May 2, 1988. The Branch Banking and Trust Company had closed the account on its own initiative in 1988 and refused to recognize it as an active account.

The Blackmons moved from Sanford, North Carolina to Toledo, Ohio sometime during the second week in November, 1990. They did not provide a forwarding or change of address notice to the post office.

They also failed to provide any written notification to their creditors.

The check which Ms. Blackmon provided to Kimbrell's covering the Fifty Dollar ($50.00) down payment was soon returned to Kimbrell's marked "NO ACCOUNT". After several attempts to have Ms. Blackmon make good on the returned check, Kimbrell's, through its agent, Mr. Chris Wilms, discovered that the Blackmons had left the state. Mr. Wilms was unsuccessful in his attempts to learn exactly where the Blackmons had moved, but was able to determine that their destination was somewhere in the Toledo, Ohio area.

Mr. Wilms, as agent for Kimbrell's, filed a complaint against Ms. Blackmon with the Sanford Police Department on November 28, 1990. The complaint was based upon the check drawn on the closed account, Ms. Blackmon's failure to make good on the returned check, her failure to make the installment payment due on November 15, 1990, and her failure to provide Kimbrell's with a forwarding address. After investigation, Detective Eads, the officer who took Mr. Wilms' complaint, swore out an arrest warrant for Ms. Blackmon under a charge of "Obtaining Property by False Pretenses." N.C. Gen.Stat. § 14–100. This warrant was approved and signed by the Magistrate on December 11, 1990. At that time, neither Kimbrell's nor the Sanford Police Department were aware of Ms. Blackmon's Toledo, Ohio address and Kimbrell's continued in its efforts to locate Ms. Blackmon.

On February 19, 1991, the Blackmons filed a joint Chapter 7 Bankruptcy petition in Toledo, Ohio. On their petition, the Blackmons listed Kimbrell's as an unsecured, schedule A–3 creditor for Three Hundred Thirty-eight Dollars ($338.00), the total financed purchase price, which includes the Fifty Dollar ($50.00) bad check amount. The Debtors were granted a discharge based upon their Chapter 7 petition on June 3, 1991.

Kimbrell's was notified by the Court of the Blackmon's filing on or about February 22, 1991. At this point, Kimbrell's ceased their efforts to collect on the debt or obtain the return of the merchandise. However, shortly thereafter, Mr. Wilms was queried by Detective Eads as to whether Kimbrell's had been successful in locating Ms. Blackmon's current whereabouts. Mr. Wilms informed Detective Eads that they had recently received notification of the Blackmon's Bankruptcy filing, at which point, Detective Eads asked for the Toledo address listed on the Bankruptcy notice. Mr. Wilms acquiesced to Detective Eads' request, providing him with Ms. Blackmon's Toledo, Ohio address.

The Toledo Police Department subsequently arrested Ms. Blackmon on March 4, 1991 at her Mayo Street address based upon the Sanford Police Department's warrant. Ms. Blackmon was unable to post bond and was incarcerated in the Lucas County Jail for eleven (11) days while awaiting an extradition hearing. The Sanford Police Department subsequently decided not to extradite Ms. Blackmon due to the relatively small dollar value involved in the offense. As a result, Ms. Blackmon was released from custody on March 14, 1990.

Ms. Blackmon's attorney wrote to Kimbrell's protesting the prosecution of his client and requesting appropriate compensation for the period of her incarceration. Counsel for Kimbrell's responded in an April 24, 1991, letter that the collection efforts of Kimbrell's took place in the fall of 1990 and that criminal actions are not enjoined by the filing of a Bankruptcy petition. In addition, they attempted to clarify the fact that Kimbrell's was in fact a secured creditor and not an unsecured creditor as stated in the Blackmon's Bankruptcy filing. Based upon that secured status, their attorney requested a statement as to the Blackmon's intention to retain or relinquish the collateral. It was not until this point that any efforts by Kimbrell's surfaced anew to collect upon the contract or obtain the return of the dinette set. Up until this Trial, Kimbrell's has made no further efforts to either collect upon the debt, or obtain the return of their property.

On June 4, 1991, Ms. Blackmon, through her attorney, filed this adversary case

against Kimbrell's. In the complaint, she asks for an award of Fifty Thousand Dollars ($50,000.00) in compensatory damages and One Hundred Thousand Dollars ($100,000.00) in punitive damages as a result of a "willful violation of the injunctive stay pursuant to § 524 of Title 11 U.S.C." by Kimbrell's. (Plaintiff's complaint). At Trial her attorney argued that Kimbrell's was guilty of a willful violation of the stay under § 361 of the Bankruptcy Code.

## LAW

Before addressing the issues in this case, the Court must first clarify the correct Section of the Bankruptcy Code applicable to the facts. While the Plaintiff has referred to §§ 361 and 524 of Title 11 U.S.C., these Sections are not applicable to the facts or arguments as presented. Under the Bankruptcy Code, § 361 applies to situations in which adequate protection is required by a secured creditor. 11 U.S.C. § 361. The question of adequate protection was never broached in these proceedings.

Along the same lines, § 524's injunctive stay provision comes into play only *after* the Debtor has been granted a discharge by the Court. In this case, the Plaintiff has argued that the violation of the stay occurred from the Defendant's actions prior to the Plaintiff's release from incarceration on March 14, 1991. The Blackmon's were not granted a Discharge under their Chapter 7 petition until June 3, 1991, making a § 524 cause of action totally inapplicable to the Plaintiff's contentions.

The correct Section of the Bankruptcy Code applicable to the facts and arguments presented to this Court is 11 U.S.C. § 362 which applies to the automatic stay provisions of the Bankruptcy Code. This Section comes into play at the time the petition for relief under Chapter 7 is filed with the Court (February 19, 1991), and remains in effect until Discharge is granted (June 3, 1991).

■ The "Automatic Stay" provision of the Federal Bankruptcy Code prohibits a creditor from commencing or continuing any acts to collect or recover a claim that arose prior to the filing of the Debtor's petition in Bankruptcy. 11 U.S.C. § 362(a). It also allows an individual who has been injured by a willful violation of the stay to recover actual damages, including costs, attorneys' fees, and punitive damages. 11 U.S.C. § 362(h). However, the automatic stay provision of § 362(a) does not prohibit the commencement or continuation of a *criminal* action or proceeding against the debtor. 11 U.S.C. § 362(b)(1).

The exception to the automatic stay for criminal actions or proceedings is not without limitation. It is well established that a creditor is not permitted to utilize a criminal prosecution as a means of avoiding the automatic and injunctive stay provisions of the Bankruptcy Code in an effort to continue to collect on a claim owed by the debtor. Judge Sidman of the United States Bankruptcy Court, Southern District of Ohio quoted approvingly from *In re Caldwell*, 5 B.R. 740 (Bankr.W.D.Va.1980), when he considered whether the exception to the automatic stay under § 362(b)(1) applied to a criminal prosecution for a bad check.

> It therefore is incumbent upon this Court to make inquiry and determine from the facts and circumstances presented, if a creditor is seeking to utilize the criminal process as a means of extracting a preference not accorded other creditors similarly situated. On the other hand, if a creditor's actions are nothing more than aiding and assisting the prosecuting authorities in their rightful duties in protecting society by punishment for violation of the criminal laws, then such is obviously what Congress intended by enacting 11 U.S.C. § 362(b)(1). *In re Caldwell*, 5 B.R. 740, 742 (Bankr.W.D.Va. 1980).

*In re Lake*, 11 B.R. 202, 204 (Bankr.S.D. Ohio 1981).

The principal questions before the Court are: 1.) What part did Kimbrell's play in Ms. Blackmon's incarceration? 2.) When did those acts take place? and 3.) Was the principal motivation for the actions of Kimbrell's based upon their desire to collect upon the debt or obtain the return of their collateral?

■ It is apparent from the facts in this case that Kimbrell's played a key roll in Ms. Blackmon's eventual incarceration. Mr. Wilms, as an agent of Kimbrell's, was responsible for filing the initial complaint which resulted in Ms. Blackmon's arrest. The complaint, however, was filed on November 28, 1990, nearly three (3) months prior to the date the Blackmon's petition was filed. The initiation of the criminal complaint was therefore outside any possible application of the automatic stay provision even if it had been intended to facilitate collection. Any legitimate actions taken to collect upon the debt by Kimbrell's prior to the actual filing of the Blackmon's petition in Bankruptcy are not prohibited by any section of the Bankruptcy Code.

■ Plaintiff contends that the defendant's actions in providing the Sanford police department with Ms. Blackmon's address from the bankruptcy notification was a willful violation of the automatic stay for the purpose of collecting upon a prepetition debt. The plaintiff, however, has failed to provide any evidence to support this contention.

Mr. Wilms testified that upon receiving the bankruptcy notification, he ceased all efforts to pursue the debt, that it was Detective Eads who subsequently contacted him, and that Detective Eads had requested the address listed on the filing notice. Mr. Wilms had no legitimate reason to refuse to comply with Detective Eads request. "The purpose of bankruptcy is to protect those in financial, not moral difficulty." *In re Holder*, 26 B.R. 789, 793 (Bankr.M.D.Tenn.1982). This Court can find no basis upon which to conclude that the actions of Kimbrell's in providing the current address of Ms. Blackmon to the Sanford Police Department was a willful violation of the automatic stay provision of the Bankruptcy Code.

■ The April 24, 1990 request by Kimbrell's for a statement declaring the Blackmon's intentions to either affirm the debt or return the collateral was not a violation of the Bankruptcy stay provisions. 11 U.S.C. § 521(2)(A) (1988) requires a debtor with consumer debts secured by collateral to make such a determination within thirty (30) days of the initial filing date. A request by a creditor for information pertaining to their statutorily provided rights under the Code is not a violation of the stay.

The final question to be answered is whether the principal motivation for Kimbrell's actions was based upon their desire to collect upon the debt or to obtain the return of their collateral. Mr. Wilms testified that it was both his policy as Credit Manager, and standard store policy, to file a criminal complaint in situations where a check is returned and the customer fails to correct the deficiency. There is little question that the principal motivation for this type of policy is to deter individuals from making payments with "bad checks" in the first place. Once again, the plaintiff has failed to present any evidence which would tend to show that Kimbrell's used the criminal prosecution system to aid and assist it in the collection of a bad check.

■ Mr. Wilms testified that once he files the complaint with the police department, it is up to the police department to determine whether actual charges are filed and Kimbrell's plays no further part in that decision. At no time did Kimbrell's contact the plaintiff and offer to drop the criminal charges being pursued if the debt were paid or the collateral returned. The warrant itself indicates that the "State will not extradite due to minor amount involved." This statement fully supports the defendant's contention that not only the decision to prosecute, but also the decision not to extradite Ms. Blackmon was made by the Sanford Police Department, and not Kimbrell's.

While this Court is sympathetic to the Plaintiff, and acknowledges that she may indeed have a cause of action based upon the manner in which her incarceration and eventual release occurred, it is unable to support a cause of action against the Defendant under the Bankruptcy Code. In reaching the conclusions found herein, the Court has considered all of the evidence and arguments of Counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the Plaintiff's Complaint against the Defendant for violation of the Bankruptcy Codes stay provisions be, and is hereby, DISMISSED.