**In re Michael & Lillie KIRBY, Debtors.**

**Bankruptcy No. 90–09250–KL3–13.**

United States Bankruptcy Court,
M.D. Tennessee.

Sept. 17, 1992.

William Bryan Roehrig, III and John E. Dunlap, Gallatin, TN, for debtors.

W. Fred Williams, Nashville, TN, for respondent, Gladys Whitley.

## MEMORANDUM OPINION ON DEBTOR'S PETITION FOR CONTEMPT

GEORGE C. PAINE, II, Chief Judge.

There are two matters before the court. One is the Debtor's application for contempt sanctions against Gladys Whitley for allegedly violating the automatic stay, and the second is the Debtor's objection to the transfer of Whitley's claim to the Debtor's parents. However, the court's resolution of the application for sanctions will render the objection moot.

There are also two issues within the motion for contempt. The first is Whitley's direct requests for reimbursement from the Debtor. The second pertains to her lien agreement with the Debtor's parents.

At the hearing on the motion for contempt held on April 6, 1992, the court found that Gladys Whitley violated the automatic stay by directly contacting the Debtor and requesting reimbursement on her claim. Nevertheless, the court found this to be a mere technical violation and withheld sanctions against her.

This memorandum relates to Whitley's lien agreement with the Debtor's parents.

The following are findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052.

### FACTS

The people involved in this case are the Debtor Lillie Kirby, and her husband Michael, now deceased; her parents the Huffmans, and her mother's sister, Gladys Whitley. Gladys Whitley is a 76 year old widow, and is a retired teacher.

On October 23, 1990, Michael and Lillie Kirby jointly filed for relief under Chapter 13 of the Bankruptcy Code. The Debtors' confirmed plan provided that a note to Sovran Bank, which was cosigned by Gladys Whitley, would be paid in full. It also provided for 100% payment of the Debtor's other unsecured obligations. Order Confirming Chapter 13 Plan (Nov. 29, 1990).

On March 6, 1991, Michael Kirby died, and the available income to be used to fulfill the plan was reduced. Lillie Kirby could no longer make the payments proposed under the plan and sought to modify it. She surrendered her home and changed Sovran Bank's claim to a regular unsecured claim. Motion to Modify Chapter 13 (Mar. 25, 1992).

On January 25, 1992, Sovran filed for relief from the codebtor stay. Consequently, Sovran was permitted relief from the codebtor stay to pursue collection on the note from Whitley. Order Granting Motion To Modify (Apr. 26, 1992).

The evidence revealed that after Whitley was compelled by Sovran Bank to fulfill her obligation as cosignatory on the note, she began to contact the Debtor at home

and at work for reimbursement. The Debtor testified to telling Whitley that she was unable to pay, and that the rules of bankruptcy made it improper for her to contact · her any longer. Whitley then contacted the Debtor's parents, the Huffmans, calling them frequently, requesting repayment on the note.

. She eventually persuaded them to purchase the note, using their home as collateral. She assigned the note to them in exchange for a lien on their home. Mr. Huffman testified to voluntarily executing the note assignment contract, but said that he was unaware of the entire consequences of the document.

## CONCLUSIONS OF LAW

### A. The "Pressure" Issue

The automatic stay serves to relieve the debtor of the financial pressures that drove him into bankruptcy. Therefore, in the event that a creditor's actions directed to the debtor causes pressure to bear upon the debtor to repay his or her debts, there is quite possibly, occasion for sanctions.

■ The first issue which the court will examine pertains to Whitley's contact with the debtor's parents and the consequential pressure upon the debtor. Does Whitley's contact with the Debtor's parents in fact constitute a violation of the automatic stay?

### 1. Application of § 362 to a debtor in bankruptcy only

Section 362 of the Bankruptcy Code provides fundamental protections granting an automatic stay against all methods of debt collection activities and harassment.

§ 362 says in part:

(a) [A] petition filed under ... this title ... operates as a stay,... of—

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title....

11 U.S.C. § 362 (1991).

The protections afforded by the stay provisions of the Code are undeniably broad but are focused in application to debtors and the debtor's estate. 11 U.S.C. § 362. *See In re Advanced Ribbons & Office Products, Inc.*, 125 B.R. 259, 263 (Bankr. 9th Cir.1991). Furthermore, § 101(13) of the Code defines a debtor as a "person or municipality concerning which a case under this title has been commenced." The Huffmans have not filed for bankruptcy. They are therefore not covered by the § 362 automatic stay provisions. Therefore, in this sense, Whitley's contact with them is not a violation of the automatic stay.

### 2. Recovery from nondebtor third parties permitted

A perfunctory look at the provisions of § 362 especially the words "any act to collect ... or recover a *claim against the debtor*" (underlined for emphasis) may justifiably tolerate the widest of interpretations. "While the scope and provisions of the automatic stay are very broad, (*In re Bialac*, 712 F.2d 426, 431 (9th Cir.1983)), the protection is not limitless and the stay cannot extend without bounds." *In re Torrez*, 132 B.R. 924, 941 (Bankr.E.D.Cal. 1991). Based upon the facts of the matter under consideration here, the Court holds that Whitley can recover from a nondebtor third party. The provision of § 362 automatic stay privileges are not to be utilized for the purpose of obstructing every possible method open to creditors to recover the debts owed to them from persons who have not filed bankruptcy.

The *Torrez* court expounded thus:

The automatic stay was *not intended to preclude creditors from seeking their right to payment from those who answer for the debts of the debtors. Rather, the automatic stay exists to prevent acts against debtors themselves, their property, or estate property.* To extend such a broad interpretation of the stay provisions in this instance as advanced ... would be to create a stay against nondebtors under § 362(a) which was clearly not intended by the legislators when enacting the Code.

*In re Torrez*, 132 B.R. at 944 (emphasis added). Indeed, the Bankruptcy Code has

provided for codebtor stay in §§ 1201 and 1301.

In further support of this interpretation, the court would refer to *In re Juneau's Builder Center, Inc.*, 57 B.R. 254 (Bankr. M.D.La.1986), which held that there was *no action against the debtor, property of the debtor or property of the estate* warranting the application of automatic stay. A bank foreclosed upon premises occupied by debtor, placing pressure on the debtor either to meet the third party lessor/mortgagor's obligations or face the possibility of eviction. In a footnote, the court opined that if the debtor had been evicted, then the automatic stay may have been applicable. *Id.* at 256 n. 2.

The Sixth Circuit has said:

[I]t is noted that [11 U.S.C. § 362(a)] facially stays proceedings "against the debtor" and fails to intimate, even tangentially, that the stay could be interpreted as including any defendant other than the debtor.... It is universally acknowledged that an automatic stay ... accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors....

*Lynch v. Johns–Manville Sales Corporation*, 710 F.2d 1194, 1196 (6th Cir.1983).

### 3. Identity between entities?

■ It is quite possible that the Debtor feels somewhat pressured to repay the debt in order to restore her parents to their prior status quo. In the eyes of the law however, this does not by itself constitute a violation of the automatic stay provisions of the Code. An interesting theory, although not proposed in this case, is that there is such identity between the Debtor and her parents that the Debtor is the real party from whom payment was sought. See *In re Carl Neuman*, 128 B.R. 333, 337 (S.D.N.Y.1991) in which a shareholder derivative suit instituted against a corporation was held to violate automatic stay in light of identity between the defendants, who owned 78% of stock, and corporation. *Id.* at 337. The court found a violation of the stay despite the fact that the defendants were nondebtors, but no sanctions

were awarded because the violation was neither willful nor in bad faith. *Id.* at 339.

Applying the "identity between the entities" theory to the present case, the court is of the opinion that it lacks any evidentiary support however. The case before the court does not involve corporate entities or natural persons holding majority of stock in a corporation. The court saw and heard all the witnesses and finds no identity between the Debtor and her parents such as would justify the application of this theory. In addition, the parties involved had all attained majority, and were all competent adults acting freely, independently and voluntarily.

### 4. Codebtor Stay

■ Furthermore, the Huffmans are third parties in this case. Application of the automatic stay privilege with reference to third parties is found in § 1201 and § 1301 in the provisions on codebtor stay. If therefore, the acts forming the basis of the petition for contempt are within those parameters, there may be a violation of the automatic stay. However, the evidence revealed that the Huffmans are neither debtors nor codebtors. To interpret stay provisions in their favor in this case would be to create a stay in favor of nondebtors not provided by Congress. In a persuasive opinion, the Fourth Circuit stated:

Congress knew how to extend the automatic stay to nondebtors and their property by enactment of the codebtor's stay provision. In fact, extension of the automatic stay protection to nondebtors and their property would render the codebtor's stay provisions under the Code sections 1201 and 1301 mere surplusage.

*Torrez*, 132 B.R. at 938–39 (citing *Credit Alliance v. Williams*, 851 F.2d 119, 121 (4th Cir.1988)).

### B. The "Lien" Issue

The next question is whether Whitley violated the stay by obtaining a lien on the Debtor's parents' home?

■ The Debtor contends that this lien violates the stay although she correctly acknowledges that the house is not yet property of the estate. Memorandum in

 

Support of Contempt of Court (Jan. 27, 1992) at 3. Her argument is that it could very easily become property of the estate if her parents (who are over eighty years old, and in poor health) should die prior to the conclusion of the case. In support of this argument, she accurately contends that in a Chapter 13 case property of the estate includes property which the Debtor acquires after the petition is filed but before the case is discharged, dismissed, or converted. *Id.*

She further argues that in the event of her parents' demise, the majority of her share of the estate would be devoted to the plan in order to increase the dividend to unsecured creditors and therefore, Whitley's lien on this asset gives her an unfair advantage over other unsecured creditors in the plan.

Further, she asserts that to permit the lien agreement would defeat the purpose of § 362(a)(5) because it would affect her future interest in her parents' estate, thereby infringing upon the fresh start intended by the Code.

She further testified that she and her brothers have an inheritance under her parents' will and that it would be unfair for her brothers' future interest in the subject property to be depleted by way of her aunt's lien.

The court finds no substantive evidence that the subject property was property of the estate. The Debtor herself agrees. The property belongs to the Huffmans. The Debtor failed to present evidence of a valid future interest in the property. For example, there is no evidence of any *inter vivos* conveyance of the property to the Debtor, neither is there evidence of a constructive trust created in favor of the Debtor with respect to the property.

The Debtor made reference to the property as being in her parents' will. It is well settled in law that a will does not speak until after the death of the testator. 79 Am.Jur.2d, Wills, § 2 (1975). The Huffmans are therefore free to alter their will and to deal with their property however they wish. Moreover, this petition was filed on October 23, 1990, and there has

been no change in the Debtor's assets to reflect the inclusion of the subject property.

Consequently, as there is no property of the Debtor involved, the court finds that the Debtor's interest in the property of the Huffmans does not fall within the definition of property of the estate as outlined in the foregoing. "[W]here the Debtor has no interest in property, § 362 offers no protection." *In re Bialac,* 712 F.2d 426, 432 (1983) (citing *In re Casgul of Nevada, Inc.,* 22 B.R. 65, 66 (Bankr. 9th Cir.1982)).

The Debtor's petition for contempt is denied for the reasons given. The objection to transfer of a claim is therefore moot.

IT IS SO ORDERED.