*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b).  See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 14b0004n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:   CHARLES COLLETT; GRACE COLLETT, | ) | No. 13-8033 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| GRACE COLLETT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LEE OIL COMPANY, INC., | ) | |
| | ) | |
| Appellee. | ) | |

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky at London.
Bankruptcy Case No. 12-61190.

Decided and Filed: May 21, 2014

Before: EMERSON, HARRISON, and LLOYD, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Marcia A. Smith, Corbin, Kentucky, for Appellant.  Travis A. Rossman, JEWELL & ROSSMAN LAW OFFICE, PLLC, Barbourville, Kentucky, for Appellee.

—————————————

## OPINION

—————————————

**MARIAN F. HARRISON**, Bankruptcy Appellate Panel Judge. Debtor[1] Grace Collett appeals the decision of the bankruptcy court denying her motion for sanctions against Lee Oil Company for allegedly violating the automatic stay by cooperating in a criminal investigation after her bankruptcy petition was filed. The bankruptcy court held that pursuant to 11 U.S.C. § 362(b)(1), the automatic stay did not apply to Lee Oil Company's actions. For the reasons stated below, the decision of the bankruptcy court is AFFIRMED.

### ISSUES ON APPEAL

The issues raised in this appeal are whether the bankruptcy court: (1) applied the proper legal standard in determining that Lee Oil Company did not violate the automatic stay by assisting in a criminal prosecution of the Debtor after the Debtor filed her bankruptcy petition; (2) erred in its application of that standard to the facts of the instant case; and (3) erred in holding that Lee Oil Company could pursue collection from a third party insurance company without violating the automatic stay.

### JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and none of the parties have timely elected to have these appeals heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A bankruptcy court's final order may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v U.S.*, 489 U.S. 794, 798 (1989) (citation and quotation marks omitted). An order denying

—————————————

[1] Debtor filed a joint petition with her husband. However, since the alleged violation of the automatic stay was only directed at Grace Collett, this opinion will refer to Debtor in the singular.

2

a party's motion for sanctions for violating the automatic stay is a final appealable order. *In re Glaspie*, 410 B.R. 261, 266 (E.D. Mich. 2007) ("'The order in this case denied [the] motion for contempt. This ended the particular controversy regarding violation of the automatic stay. . . .'") (citing *Anastasia Cruises, Inc. v. Exxon Mobil Corp.* (*In re Commodore Holdings, Inc.*), 331 F.3d 1257, 1259 (11th Cir. 2003)). *See also* 10 Collier on Bankruptcy ¶ 9020.04 (16th ed. rev. 2013) ("Contempt orders, like other orders resulting from contested matters, are final orders subject to appeal."); *Lindsey v. O'Brien, Tanski, & Young Health Care Providers* (*In re Dow Corning Corp.*), 86 F.3d 482, 488 (6th Cir. 1996) (citations omitted) ("[The] finality requirement is considered 'in a more pragmatic and less technical way in bankruptcy cases than in other situations.' "). *See also TranSouth Fin. Corp. v. Sharon* (*In re Sharon*)*,* 234 B.R. 676, 679 (B.A.P. 6th Cir. 1999) (Order granting sanctions for violation of stay is a final order.).

The bankruptcy court's legal conclusions are reviewed de novo. *Caradon Doors & Windows, Inc. v. Eagle-Picher Indus., Inc.* (*In re Eagle-Picher Indus., Inc.*), 447 F.3d 461, 463 (6th Cir. 2006). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (internal quotation marks and citations omitted). "No deference is given to the trial court's conclusions of law." *Mktg. & Creative Solutions, Inc. v. Scripps Howard Broad. Co.* (*In re Mktg. & Creative Solutions, Inc.*), 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) (citations omitted).

The bankruptcy court's factual conclusions are reviewed under a clearly erroneous standard. Fed. R. Bankr. P. 8013. A finding of fact is deemed clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007) (citations omitted). " 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). Moreover, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. As explained by the United States Supreme Court:

> When findings are based on determinations regarding the credibility of witnesses, [Fed. R. Civ. P.] 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. . . . [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Anderson*, 470 U.S. at 575 (internal citations omitted) (citing Fed. R. Civ. P. 52(a), whose language regarding deference to the lower court tracks Federal Rule of Bankruptcy Procedure 8013). *See also Hamilton v. Carell*, 243 F.3d 992, 997-98 (6th Cir. 2001). Thus, "[t]he clearly erroneous standard does not permit this Panel to substitute its assessments of credibility in place of the explicit findings made by the bankruptcy court." *Lyon v. Eiseman* (*In re Forbes*), 372 B.R. 321, 334 (B.A.P. 6th Cir. 2007).

## FACTS

In January 2007, the Debtor began leasing and operating a convenience store in Bell County, Kentucky. The store, known as Gracie's Grocery, sold gasoline supplied by Lee Oil Company.

While there was no written contract between the Debtor and Lee Oil Company, their business arrangement was straightforward. Lee Oil Company regularly delivered gasoline to Gracie's Grocery. The credit card machine at the grocery was set up in the name of Lee Oil Company. All credit card sales, whether for gasoline or for other merchandise, were credited to Lee Oil Company. At the end of each day, the Debtor would compute the difference between the total amount of gasoline sold and the total amount of credit card purchases. She would place the difference, in cash or checks endorsed to Lee Oil Company, in a paper bag and put the bag into a safe that Lee Oil Company had installed at the store. Several times a week, Lee Oil Company would pick up the paper bags.[2]

---

[2]In theory, Lee Oil could owe the Debtor money under this arrangement, but the record reflects that this situation never occurred.

4

Deposits were generally made on a daily basis, except for Fridays and weekends. Those deposits were to be made on the following Monday. However, the Debtor did not always deposit the funds on a daily basis. She would sometimes fall behind by two or three days, but then she would catch up.

In 2009, the Debtor fell behind in the deposits. The shortfall was between $6,000 and $7,000. Lee Oil Company stopped delivering gasoline until the shortfall was paid, at which time the gasoline deliveries resumed.

At some point, Lee Oil Company opened a bank account so that the Debtor could make the deposits directly into the account. Lee Oil Company also gave the Debtor a form to fill out daily. The form disclosed total gas sales, total credit card purchases, and the difference to be deposited. The Debtor would fax the form to Lee Oil Company each day. Sometimes the Debtor's daily gasoline sales report would disclose that cash sales of gasoline were in excess of credit sales but no deposit was made into the Lee Oil Company account. Lee Oil Company did not reconcile the bank account daily.

In the spring of 2012, the Debtor's husband had serious health problems and the Debtor fell behind on all of the bills at the store, including the money owed to Lee Oil Company.

In June 2012, Lee Oil Company informed the Debtor that she was about $50,000 behind in her deposits. On June 27, 2012, Lee Oil Company stopped delivering gasoline to Gracie's Grocery and removed any remaining gasoline from the premises. On August 28, 2012, the Debtor closed the store.

Lee Oil Company gave the Debtor until September 4, 2012, to pay the money owed. The money was not paid, and on September 5, 2012, Lee Oil Company contacted the local county attorney who indicated that the matter needed to be taken to the local police, and the information was delivered to the Bell County Sheriff's Office in Pineville. Lee Oil Company viewed the matter as "criminal theft."

5

On September 11, 2012, Lee Oil Company contacted its insurance carrier (via electronic mail) regarding the filing of a claim seeking reimbursement for the money owed by the Debtor. The insurer indicated that the company could only pursue a claim under the insurance policy if Lee Oil Company pursued a criminal complaint against the Debtor.

On October 5, 2012, the Debtor and her husband Charles Collett, filed a joint voluntary chapter 7 bankruptcy petition. Included on Debtors' Schedule F was the debt owed to Lee Oil Company for gasoline in the amount of $50,022.74.

On October 15, 2012, a criminal complaint was issued against the Debtor. The complaint alleged 15 counts of misdemeanor theft and 39 counts of felony theft. The complaint alleged that the Debtor owed Lee Oil Company $44,661.60. After filing the complaint, the Bell County Attorney's office contacted Lee Oil Company seeking assistance relating to the criminal complaint. Lee Oil Company fully cooperated with the county officials and provided the information that was requested.

On January 10, 2013, pursuant to the criminal complaint, the Debtor was arrested. She was incarcerated overnight before she posted a surety bond and was released on January 11, 2013.

On January 18, 2013, the Debtor and her husband filed the Motion For Sanctions for Violation of the Automatic Stay which gave rise to the present appeal. On January 24, 2013, the Debtor and her husband received a discharge in their bankruptcy case.

On April 3, 2013, a grand jury declined to prosecute the Debtor on any of the criminal counts.

On April 17, 2013, the bankruptcy court held an evidentiary hearing on the Debtor's Motion for Sanctions for Violation of the Automatic Stay. On April 29, 2013, the bankruptcy court gave a bench decision denying the motion. The bankruptcy court entered an order denying the motion on June 21, 2013.

On June 27, 2013, the Debtor filed the present appeal.

**DISCUSSION**

Section 362(a) of the Bankruptcy Code provides a very broad stay of actions when an individual debtor files a bankruptcy case. Section 362(a)(1) stays the commencement or continuation of any judicial action "against the debtor that was or could have been commenced before [the bankruptcy case was filed] to recover a claim against the debtor that arose before the commencement of the [bankruptcy case.]"

An individual injured by a willful violation of the stay can recover actual damages. 11 U.S.C. § 362(k)(1). An individual seeking damages for a violation of the stay has the burden of establishing three elements by a preponderance of the evidence: (1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. *Barclay v. Reimer & Lorber Co. LPA* (*In re Barclay*), 337 B.R. 728, 2006 WL 238139, at *5 (B.A.P. 6th Cir. 2006) (table) (citing *In re Skeen*, 248 B.R. 312, 316 (Bankr. E.D. Tenn. 2000)).

"[A] 'willful violation' [does] not require proof of a specific intent to violate the stay, but rather an intentional violation by a party aware of the bankruptcy filing. . . . A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act." *In re Sharon*, 234 B.R. at 687 (citations omitted).

Section 362(b) of the Bankruptcy Code contains numerous statutory exceptions to the automatic stay. Applicable to the present case is 11 U.S.C. § 362(b)(1), which states that the automatic stay does not apply to "the commencement or continuation of a criminal action or proceeding against the debtor." Courts are divided over whether 11 U.S.C. § 362(b)(1) operates as an absolute exception to the protections of the automatic stay or whether this provision is inapplicable when the primary motivation of the criminal proceeding is to collect a pre-petition debt. *Compare Dovell v. The Guernsey Bank* (*In re Dovell*), 311 B.R. 492, 494 (Bankr. S.D. Ohio 2004) ("The exception to the automatic stay set forth in 11 U.S.C. § 362(b)(1) is inapplicable where the criminal proceeding is initiated for the purpose of collecting a debt"), *with Bartel v. Walsh* (*In re Bartel*), 404 B.R. 584, 590 (B.A.P. 1st Cir. 2009) ("[A] criminal proceeding is not subject to the automatic stay, even where it relates to debt collection or where the debtor alleges that the state is

7

proceeding in bad faith"). The Sixth Circuit has not yet decided whether 11 U.S.C. § 362(b)(1) is an absolute bar precluding all actions for violations of the automatic stay. *Michalski v. Coulson* (*In re Michalski*), 452 F. App'x. 656, 657-58 (6th Cir. 2011) (unpublished).[3]

Courts holding there is no absolute bar to an action for violation of the stay under 11 U.S.C. § 362(b)(1) look at whether the creditor's primary motive in pursuing criminal action is collection of a pre-petition debt to determine whether a stay violation has occurred. *Williamson-Blackmon v. Kimbrell's of Sanford, North Carolina, Inc.* (*In re Williamson-Blackmon*), 145 B.R. 18, 21 (Bankr. N.D. Ohio 1992). *See also Batt v. American Rent-All (In re Batt)*, 322 B.R. 776, 779-780 (Bankr. N.D. Ohio 2005). Courts have set forth three factors to consider in making that determination: (1) the part the creditor played in the Debtor's arrest and incarceration; (2) when those acts took place; and (3) the principle motivation for those acts. *In re Williamson-Blackmon,* at 21.

Based on, among other things, the live testimony of the Debtor and Mitchell Cox (Lee Oil Company's comptroller), their respective affidavits, Lee Oil Company's accounting records, daily reports faxed to Lee Oil Company by the Debtor, email correspondence between Mr. Cox and Lee Oil Company's insurance company, and correspondence between Mr. Cox and local county authorities, the bankruptcy court found that Lee Oil Company's conduct did not violate the automatic stay based on the test set forth in *In re Williamson-Blackmon*.

The bankruptcy court found that pre-petition, on September 5, 2012, Lee Oil Company contacted the local county attorney who indicated that the matter needed to be taken to the local police, and the information was delivered to the Bell County Sheriff's Office in Pineville. On

---

[3] In the opinion issued from the bench, the bankruptcy court recognized the split in authority regarding "whether § 362(b)(1) operates as an absolute exception to the protection of the automatic stay" and recognized that the Sixth Circuit Court of Appeals has not yet decided the issue. The bankruptcy court determined that it could resolve the case before it without ruling on the issue and expressly stated that it was *not* deciding the question of whether § 362(b)(1) is an absolute bar to an action for violation of the stay. Likewise, this Panel holds that because it affirms the bankruptcy court's determination that Lee Oil Company's actions did not violate the automatic stay, it does not need to address the issue of whether 11 U.S.C. § 362(b)(1) is an absolute bar to an action for violation of the stay.

September 11, 2012, also pre-petition, Lee Oil Company contacted its insurance carrier (via electronic mail) regarding the filing of a claim seeking reimbursement for the money owed to it by the Debtor. The insurer indicated that the company could only pursue a claim under the insurance policy if Lee Oil Company pursued a criminal complaint against the Debtor.

On October 15, 2012, which was after the Debtors filed their bankruptcy petition, local officials issued a criminal complaint against the Debtor. The complaint alleged 15 counts of misdemeanor theft and 39 counts of felony theft. The complaint alleged that the Debtor owed Lee Oil Company $44,661.60. After filing the complaint, the Bell County Attorney's office contacted Lee Oil Company seeking assistance relating to the criminal complaint. Lee Oil Company fully cooperated with the county officials and provided the information that was requested.

Based on these facts, the court held:

> Debtor would have the Court find that Lee Oil could not have pursued the criminal prosecution in good faith because there could be no theft if there was no trust relationship. If there was no theft, then Lee Oil must have pursued the criminal complaint to recover money from the Debtor. Debtor provided compelling testimony to suggest that there was no trust arrangement, but Debtor admitted on cross examination that she understood how Lee Oil might characterize her actions as theft. Further, Mr. Cox adamantly denied an ulterior motive and his stated reasons were uncontradicted. Based on this, the Court cannot find the Debtor has refuted Lee Oil's testimony regarding its motives. The Court is not adjudicating whether Debtor committed the criminal action, and the Court is not deciding whether the prosecution of the Debtor was malicious in nature or otherwise actionable. The court only finds and concludes that on the evidence in the record the Debtor has not carried her burden to prove that the . . . creditor intentionally violated the automatic stay, and the Motion is therefore denied.

Oral Op. Tr. 9:16-10:12, April 29, 2013, ECF No. 70.

The bankruptcy court's ruling is based both on objective facts (for example, the September 11, 2012, email correspondence indicating that Lee Oil Company approached local officials prior to the filing of the Debtor's bankruptcy petition and indicating that Lee Oil Company believed a crime had taken place) and the credibility of the witnesses. Debtor's only argument is that

9

her interpretation of the facts (which is that Lee Oil Company's sole purpose for pursuing criminal action against the Debtor was to collect a pre-petition debt) is more credible than the evidence and testimony offered by Lee Oil Company – evidence which showed that Lee Oil Company's only participation in the criminal process post-petition was to assist the prosecutor in its criminal investigation and that its primary motive in the pre-petition request for criminal action was to report what it viewed as a theft.

Issues of credibility are squarely within the purview of the bankruptcy court and this panel is required to give those findings great deference. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996).

Based on the facts and the credibility of the witnesses, the bankruptcy court concluded that the primary purpose in pursuing the criminal action against the Debtor was not to collect the pre-petition debt from her, but rather to collect from Lee Oil Company's insurer. Because Lee Oil Company's assistance in the criminal action was in pursuit of collection from its insurer, and because those actions were initiated pre-petition, the bankruptcy court found that Lee Oil Company did not violate the stay.

The bankruptcy court's conclusion that Lee Oil Company's assistance in the criminal prosecution was primarily motivated by its desire to collect from its insurer is supported by the evidence and is not clearly erroneous. It is well established that a creditor may collect from a non-debtor third party without violating the automatic stay. *See In re Kirby*, 151 B.R. 463, 465-66 (Bankr. M.D. Tenn. 1992) ("The provision of § 362 automatic stay privileges are not to be utilized for the purpose of obstructing every possible method open to creditors to recover the debts owed to them from persons who have not filed for bankruptcy."); *In re White*, 415 B.R. 696, 698 (Bankr. N.D. Ill. 2009) (citations omitted) ("Generally, the automatic stay protects the bankruptcy debtor and does not bar suits against third parties, such as nondebtor entities, even when wholly owned by the debtor, or the debtor's insurers, guarantors, and sureties."). Since a creditor's pursuit of collection from a third party does not violate the automatic stay, the bankruptcy court did not err when it

concluded that Lee Oil Company's attempt to collect from its insurer was not a violation of the automatic stay.

## CONCLUSION

Because the bankruptcy court's findings of fact are specific and fully supported by the record, and the bankruptcy court did not err in its application of the law, the bankruptcy court's June 21, 2013, order denying Debtors' motion for sanctions for violation of the automatic stay is AFFIRMED.